BYRON LIESENFELD V. STATE OF NEBRASKA.

FILED NOVEMBER 8, 1935.   No. 29451.

*Walter C. Weiss* and *Waring & Waring*, for plaintiff in error.

*William H. Wright, Attorney General,* and *Paul P. Chaney, contra.*

Heard before ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

ROSE, J.

In a prosecution by the state in the district court for Thayer county, Byron Liesenfeld, defendant, was convicted of burglary. For that offense he was sentenced to serve a term of three years in the penitentiary. By petition in error he has presented for review the record of his conviction.

The evidence is challenged as insufficient and the failure of the trial court to direct an acquittal is assigned as error. An earnest argument is directed to the proposition that the evidence on which defendant was convicted is circumstantial and does not exclude every rational hypothesis except that of defendant's guilt.

Defendant was prosecuted under the statute providing

that whoever wilfully, maliciously and forcibly breaks and enters into a private building with intent to steal property of any value shall be punished. Comp. St. 1929, sec. 28-538. The information charged that defendant, October 26, 1934, thus entered a building belonging to August Hergott in Thayer county with intent to steal property of value belonging to him. Property feloniously taken from the building was wheat.

The state relies on a series of circumstances to sustain the conviction. The following facts or inferences are fairly deducible from the evidence: Hergott, on his farm in Thayer county, owned a building, an old dwelling-house, about 20 rods south of a highway running east and west. In the west room of the building, in which there was a window, he had 330 bushels of 1931 wheat on the afternoon of October 25, 1934. The doors and windows of the building were then all nailed up. The next forenoon, October 26, 1934, the window in the west room showed that it had been broken open. Part of the wheat was missing. A hole had been punched in the siding between the window and the ground. Near the window, boards on the outer wall bore indentures which appeared to have been caused by blows. Car tracks made by smooth treads in the center had diamond shaped figures at the edges. Tracks of a trailer ended near the window. The sheriff drew on paper impressions of the car tracks. Between 1 and 2 o'clock on the morning of October 26, 1934, defendant went into a place where a taxi business was being conducted in Fairbury, Jefferson county, said he had a trailer north or west of town, and asked Charles C. Melander, who was in charge, to bring the trailer in and store it in the garage. For that service defendant offered his car, but Melander used his own. The trailer, nearly full of wheat, was found by the roadside two miles north of Fairbury and was pulled into the garage about 3:15 the same morning. A sample of wheat in the trailer was there taken by a police officer. Defendant left the garage with his car and the trailer about 8:15 the same morning and was at the Lea

Milling Company's place of business, in Fairbury, from 8:20 to 8:35. There defendant sold the wheat and received for it a check for $32.25. Irons projecting from the rear of the trailer were about knee high from the ground. The hole and indentures in the siding of the building under the west window were also about knee high from the ground. Smooth centers of the treads on the tires of the wheels on defendant's trailer and diamond shaped figures on the edges of the tires were peculiarities in the car tracks by Hergott's building, from which old wheat, raised in 1931, had been taken. The grains of wheat taken from the trailer were small. Samples from both the building and the trailer were identified and submitted to the jury for comparison. The wheat in defendant's trailer was moved late at night. Defendant did not haul it at night into Fairbury, a county seat where there were police offcers of both county and city, though his own car was equipped with a trailer attachment, but he did haul it early next morning in daylight from the garage to the place where he sold it, a distance of a few blocks.

The law is that burglary may be proved by circumstantial evidence. The links in the chain of circumstances outlined herein were admissible in evidence. The weight of such circumstances in connection with all other evidence in the record was a question for the jury. Taken as a whole, the evidence adduced by the state, if believed by the jury, was sufficient to exclude every rational hypothesis except the guilt of defendant. In this view of the record the evidence is sufficient to sustain the conviction.

An instruction to the jury on reasonable doubt, stating that they are not at liberty to disbelieve as jurors, if they believe as men, is challenged as erroneous. Instructions of that nature have often been criticized by the supreme court but have not been held so prejudicial as to result in reversals. When the entire charge to the jury is considered in the present instance, the giving of that part of the instruction of which complaint is made was not prejudicial error.

Another instruction directs the jury to "consider the circumstantial evidence as well as the direct evidence that has been introduced before you." This instruction is assailed on the ground that it is erroneous because there is no direct evidence of the principal fact charged. In the same instruction the trial court said: "By direct evidence is meant the evidence of eyewitnesses." Circumstantial evidence was also defined. The jury knew that no witness had seen defendant breaking open the window or entering the building or taking wheat. They knew also that eyewitnesses had seen the window after it had been broken open and had seen the car tracks, the tires on defendant's trailer and other links in the chain of evidential circumstances. The jury were distinctly told that there was no attempt to state all the law in one instruction and that the instructions must be considered as a whole. The instruction containing the words "direct evidence" stated: "In order to justify a verdict of guilty based upon circumstantial evidence, the circumstances must be consistent with each other and consistent with the theory of guilt, and inconsistent with any reasonable theory of innocence." Other instructions stated the elements of the crime charged and that there could be no conviction unless each and every one of them was proved beyond a reasonable doubt. Considering the entire instruction in which the words "direct evidence" appeared, the instructions as a whole and the evidence adduced, the better view seems to be that the use of those words did not confuse or mislead the jury or prejudice defendant.

All assignments of error have been considered without finding a substantial reason for reversing the judgment.

AFFIRMED.